UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ZAMIKA WALLS,                           )
                                        )
        Petitioner,                     )
                                        )
    v.                                  )          Case No. 4:23-cv-01191-SRC
                                        )
UNITED STATES OF AMERICA,               )
                                        )
        Respondent.                     )

## Memorandum and Order

Petitioner Zamika Walls asks the Court to vacate her sentence under 28 U.S.C. § 2255.

Docs. 1, 12.  Although Walls's prison sentence has terminated, she remains under supervised

release, and makes two primary arguments for the Court to grant her petition:  first, that she

lacked the mental competence necessary to proceed at her change-of-plea hearing; and second,

that she received constitutionally ineffective assistance of counsel.  But the record in this case

forecloses both of those arguments.  Accordingly, the Court holds that Walls is not entitled to

relief or an evidentiary hearing under § 2255, and accordingly denies her petition.

## I.    Statement of facts

Walls's guilty plea agreement describes the following facts:

> Defendant Zamika Walls ("Defendant Walls") is a resident of Atlanta,
> Georgia, which is in the Northern District of Georgia.  At all times relevant to the
> Indictment, Defendant Walls was, on paper, the owner and director of Legacy
> Consumer Directed Services ("Legacy"), a business that provided personal care
> services, including consumer directed services ("CDS"), that were funded by the
> Missouri Medicaid Program.  Legacy was operated in the Eastern District of
> Missouri.

Fraudulent Enrollment of Legacy Consumer Directed Services In Missouri
Medicaid

In or about December of 2013, Defendant Walls' co-conspirator and co-
defendant Barbara Martin ("Defendant Martin") submitted an application to enroll
Legacy in the Missouri Medicaid program as a CDS provider in the St. Louis area,
in the Eastern District of Missouri.  Defendant Walls agreed with Defendant Martin
and co-conspirator and co-defendant Margo Taylor ("Defendant Taylor") that the
application would be signed using the name of Defendant Walls and listing
Defendant Walls as Legacy's director.  The purpose of Defendant Walls' voluntary
and intentional agreement with Defendant Martin and Defendant Taylor was to
obtain money and property from the Missouri Medicaid program by means of
materially false and fraudulent representations both as to the true identities of
Legacy's management staff and as to the provisions of services not actually
rendered by Legacy.  At all times relevant to the Indictment, Defendant Walls
resided in Atlanta, Georgia and did not participate in Legacy's daily operations.

Though Defendant Martin and Defendant Taylor ran Legacy's day-to-day
operations, neither were listed on Legacy's Missouri Medicaid enrollment
application as managing employees, because Defendant Martin and Defendant
Taylor did not meet the enrollment criteria to participate in the Missouri Medicaid
program.  Had they disclosed their names on the enrollment application, instead of
the name of Defendant Walls, Legacy would not have been approved to participate
in the Missouri Medicaid program.

Billing Missouri Medicaid for CDS Services Not Provided

Between in or about June of 2015 and October of 2019, Defendant Walls
and her co-conspirators Defendant Martin and Defendant Taylor attended various
Missouri Medicaid training programs covering topics including, among other
things, use of an electronic visit verification ("EVV") system to verify personal
care attendants' work.  Defendant Walls knew that personal care attendants were
supposed to clock-in and clock-out using a toll-free number from the client's home
phone in order to document that services Legacy billed to Missouri Medicaid were
provided.

Between in or about May of 2014 and September of 2020, co-conspirator
Defendant Martin, through Legacy, submitted or caused to be submitted claims for
reimbursement for CDS services to Missouri Medicaid that she knew were not
provided, for which Legacy did not have requiring [sic] supporting documentation,
and/or for which she knew that Defendant Taylor had altered EVV documentation.
Such fraudulent billing included for CDS services purportedly provided by
Defendant Walls when she was residing in Atlanta, Georgia.  Defendant Martin
also submitted claims for CDS services purportedly provided by Defendant Walls
and N.M. in the Eastern District of Missouri on dates when Defendant Martin,
Defendant Walls, and N.M. were together in other locations outside of the Eastern

District of Missouri, such as Las Vegas, Nevada, Miami, Florida, and Atlanta, Georgia.

Defendant Walls regularly received payments from Legacy derived from fraudulently obtained Missouri Medicaid reimbursements, including $77,491.71 in payments from Legacy's bank account into the personal bank account of Defendant Walls, despite the fact that Defendant Walls had provided no compensable services for Legacy. Defendant Martin and Defendant Taylor also received payments from Legacy derived from funds fraudulently paid by Missouri Medicaid for services not actually rendered.

Fraudulent Legacy PPP Loan

On or about April 6, 2020, Defendant Walls voluntarily and intentionally agreed with Defendant Martin to submit a Paycheck Protection Program ("PPP") Loan Application on behalf of Legacy to Bank of America, which was signed with the name of Defendant Walls, for the purpose of obtaining a loan by means of materially false and fraudulent representations. Bank of America is a participating lender in the PPP program and is a financial institution within the meaning of Title 18, United States Code, Section 20, the deposits of which are insured by the Federal Deposit Insurance Corporation.

The PPP program was created under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, which was enacted in March 2020 to provide emergency financial assistance to millions of Americans suffering the economic impact caused by the COVID-19 pandemic. When an authorized representative of a qualifying business fills out a PPP loan application, he or she must acknowledge the program rules and make various certifications. After PPP loan applications are completed, they are processed by participating lenders. Participating lenders fund PPP loans with their own monies, which are guaranteed by the Small Business Administration ("SBA").

The PPP loan application that Defendant Martin submitted to Bank of America on behalf of Legacy contained the following materially false and fraudulent representation: "the funds will be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments; as specified under Paycheck Protection Program Rules; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud." In support of the PPP loan application, Defendant Martin submitted payroll records containing false information, such as hours that Defendant Walls purportedly worked for Legacy when, in reality, Defendant Walls was living and working in Atlanta, Georgia during the time periods listed on the records and had provided no compensable services on behalf of Legacy. Defendant Martin and Defendant Walls knew that these representations on the PPP loan application were false, and made the

3

representations intending to receive PPP loan funds to which they knew they were not entitled.

Had Bank of America known of the misrepresentations on the PPP loan application, it would not have issued PPP Loan Number 6449397700 to Legacy in the amount of $58,295. The funds were deposited on or about May 5, 2020 into Legacy's Bank of America checking account **** **** 9658, to which Defendant Martin and Defendant Walls were signatories. After transferring the PPP loan funds and other CARES Act loan proceeds into a Legacy savings account, Defendant Martin withdrew $90,000 (which included the PPP loan proceeds) from the Legacy savings account on or about August 7, 2020. Defendant Martin then caused one cashier's check in the amount of $50,000 to be prepared for Defendant Walls, and one cashier's check in the amount of $40,000 to be prepared for Defendant Martin.

On or about October 30,[ ]2020, after Legacy had ceased operations, Defendant Martin and Defendant Walls agreed to submit a fraudulent application for forgiveness of Legacy's PPP loan to Bank of America. Defendant Martin listed Defendant Walls as a contact on the application and signed the application with the name "Legacy Consumer Directed Service." The application for loan forgiveness contained a number of false certifications, including that the loan proceeds were used to pay costs eligible for forgiveness, that Legacy had verified the payments for which it was requesting forgiveness, and that "the information in this application and the information provided in all supporting documents and forms is true and correct in all material respects." Defendant Martin also certified that "I understand that if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges."

As a result of this fraudulent application, Bank of America informed Legacy that SBA had approved loan forgiveness of the $58,295 loan in or about February of 2021.

<u>Fraudulent Proceeds Paid to Defendant Walls</u>

Defendant Walls received a cashier's check in the amount of $50,000, which contained fraudulently obtained PPP loan proceeds, as a result of her participation in the conspiracy to commit bank fraud. Because Defendant Walls was not involved in the daily operations of Legacy, the total amount of loss caused by her co-conspirators Defendant Martin and Defendant Taylor through fraudulent reimbursements from Missouri Medicaid to Legacy was neither known nor reasonably foreseeable to her. However, Defendant Walls' gain from her participation in the conspiracy to commit health care fraud totaled $77,491.71. Defendant Walls' total gain from her participation in both conspiracies to commit bank fraud and health care fraud was $127,491.71.

*United States v. Walls,* Case No. 4:21-cr-00351-SRC-3, doc. 118 at § 4.

## II.     Procedural history

### A.     Criminal proceedings

In June 2021, a federal grand jury returned a nine-count indictment against Walls, charging her with one count of conspiracy to commit health-care fraud, in violation of 18 U.S.C. § 1349; seven counts of health-care fraud, in violation of 18 U.S.C. §§ 2, 1347; and one count of conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349.  Doc. 1.[1]  One year later, Walls pleaded guilty to two counts—one of conspiracy to commit health-care fraud and one of conspiracy to commit bank fraud—in exchange for the dismissal of the seven counts of health-care fraud.  Doc. 118.  She admitted to knowingly violating 18 U.S.C. § 1349, admitted that there was a factual basis for her plea as to that count, and confirmed that she fully understood the elements of her crime—namely:

1.  That in or before December of 2013, two or more people reached an agreement to commit the crime of health-care fraud;

2.  That she voluntarily and intentionally joined the agreement, either at the time it was first reached or at some later time while it was still in effect; and

3.  That at the time she joined in the agreement, she knew the purpose thereof.

Doc. 118 at 2–3.[2]  She also admitted to knowingly violating 18 U.S.C. § 1349 on different grounds, admitted that there was a factual basis for her plea as to that count, and confirmed that she fully understood the elements of that crime—namely:

---

[1] The "Doc." numbers used in the "Criminal proceedings" sub-section only are from *United States v. Walls*, Case No. 4:21-cr-00351-SRC-3.

[2] The Court cites to page numbers as assigned by CM/ECF.

1. That in or before April of 2020, two or more people reached an agreement to commit the crime of bank fraud;

2. That she voluntarily and intentionally joined the agreement, either at the time it was first reached or at some later time while it was still in effect; and

3. That at the time the defendant joined in the agreement, the defendant knew the purpose of the agreement.

*Id.* at 3.

Walls also agreed to "waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s)." *Id.* at 11; *see* doc. 219, Plea Tr. 25:9–26:5. Further, she agreed to "waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel." Doc. 118 at 11; *see* doc. 219, Plea Tr. 26:6–11.

The United States Probation Officer prepared a Presentence Investigation Report. Doc. 153. The PSR calculated Walls's total offense level as 15 and her criminal history category as II. *Id.* at ¶¶ 48, 55. Based upon that total offense level and criminal history categorization, the imprisonment range that the federal guidelines provided was 21 months to 27 months. *See id.* at ¶ 84.

In June 2022, the Court held a plea hearing in which Walls pleaded guilty to conspiracy to commit health-care fraud and conspiracy to commit bank fraud. Doc. 117; doc. 219, Plea Tr.

15:21–16:25.  Walls confirmed that she understood the elements of her crimes and that she did, in fact, do everything set forth in those elements:

| | |
|---|---|
| **THE COURT:** | Section 3 of the plea agreement sets forth the elements of the offenses you are pleading guilty to.  The elements are those things the United States must prove at trial beyond a reasonable doubt before you could be convicted. |
| | Do you understand that? |
| **[WALLS]:** | Yes, Your Honor. |
| **THE COURT:** | With respect to Count 1, the elements are as follows: |
| | One, in or before December of 2013, two or more people reached an agreement to commit the crime of healthcare fraud; |
| | Two, the defendant, you, voluntarily and intentionally joined that agreement, either at the time it was first reached or at some later time while it was still in effect; |
| | Three, at the time you joined in the agreement, you knew the purpose of the agreement. |
| | Do you understand all of those things? |
| **[WALLS]:** | Yes, Your Honor. |
| **THE COURT:** | Did you, in fact, do all of those things? |
| **[WALLS]:** | Yes, Your Honor. |
| **THE COURT:** | With respect to Count 9, the elements are as follows: |
| | One, in or before April of 2020, two or more people reached an agreement to commit the crime of bank fraud; |
| | Two, you voluntarily and intentionally joined in the agreement, either at the time it was first reached or at some later time while it was still in effect; |
| | And, three, at the time you joined in the agreement you knew the purpose of the agreement. |

|                | Do you understand all of those things?                                                                                   |
| **[WALLS]**:   | Yes, Your Honor.                                                                                                         |
| **THE COURT:** | And did you, in fact, do all of those things?                                                                            |
| **[WALLS]**:   | Yes, Your Honor.                                                                                                         |
|                | . . .                                                                                                                    |
| **THE COURT:** | Before I ask you how you wish to plead, do you need to speak with your attorney?                                         |
| **[WALLS]**:   | No.                                                                                                                      |
| **THE COURT:** | How do you wish to plead, Ms. Walls, to the charges in Counts 1 and 9 of the indictment in this case?                    |
| **[WALLS]**:   | Guilty.                                                                                                                  |

*Id.* at 15:15–16:25; 33:24–34:4.  The Court also specifically inquired as to Walls's competence to proceed with her change of plea, finding her capable of doing so:

| **THE COURT:** | Have you ever been diagnosed with any mental health issues at any time in your life?                                     |
| **[WALLS]**:   | No.                                                                                                                      |
| **THE COURT:** | And have you been treated for addiction to narcotic drugs or controlled substances of any kind at any time?             |
| **[WALLS]**:   | No.                                                                                                                      |
| **THE COURT:** | In the last 48 hours, have you consumed any controlled substances, illegal drugs, alcoholic beverages or mind-altering substances of any kind? |
| **[WALLS]**:   | No, Your Honor.                                                                                                          |
| **THE COURT:** | Have you taken any prescription drugs or other medications within the last 48 hours?                                     |
| **[WALLS]**:   | No.                                                                                                                      |

8

| | |
|---|---|
| **THE COURT:** | Is there any medication you are supposed to be taking but for some reason have not? |
| **[WALLS]:** | No. |
| **THE COURT:** | Are you under the care of a doctor for any issues currently? |
| **[WALLS]:** | Right now a pregnancy. |
| **THE COURT:** | How far along in your pregnancy are you? |
| **[WALLS]:** | I have four weeks. I'm 35 weeks right now and I have four weeks to go. |
| **THE COURT:** | And are you experiencing any issues with your pregnancy that would cause you not to be able to understand or fully appreciate what we are doing here today? |
| **[WALLS]:** | No. |
| **THE COURT:** | Is your mind clear today, are you feeling well and are you ready to proceed? |
| **[WALLS]:** | Yes. |
| **THE COURT:** | Does either the United States or Defendant's counsel have any doubts as to the defendant's competency to proceed? [Assistant United States Attorney] Ms. Reiter. |
| **MS. REITER:** | No, Your Honor. |
| **THE COURT:** | And Mr. Wittner. |
| **MR. WITTNER:** | No, Your Honor. |
| **THE COURT:** | Based on the record, I do find that Ms. Walls is competent to proceed. |

*Id.* at 6:6–7:18. Later in the plea hearing, the Court ensured that Walls's pregnancy was not interfering with her ability to proceed:

| | |
|---|---|
| **THE COURT:** | Ms. Walls, are you okay? |
| **[WALLS]:** | Yeah. He's just kicking a lot. Sorry. |

9

| | |
|---|---|
| **THE COURT:** | All right.  I understand.  If you need to take a break, let me know, okay? |
| **[WALLS]:** | I'm fine. |

*Id.* at 30:16–21.  Then again, after thoroughly reviewing Walls's guilty plea agreement with her, the Court confirmed and found that she was competent to plead guilty:

| | |
|---|---|
| **THE COURT:** | Have you understood all of the questions that I've asked you here today? |
| **[WALLS]:** | Yes, Your Honor. |
| **THE COURT:** | Have you answered them truthfully and completely? |
| **[WALLS]:** | Yes. |
| | . . . |
| **THE COURT:** | Are you pleading guilty because you are, in fact, guilty as charged? |
| **[WALLS]:** | Yes, Your Honor. |
| **THE COURT:** | The Court finds that . . . Ms. Walls is fully competent and capable of entering an informed plea; that she's aware of the nature of the charges and of the consequences of her pleas; that her pleas of guilty are knowing and voluntary pleas made willingly and intelligently . . . . |
| | I do accept your plea of guilty and I find you guilty as charged. |

*Id.* at 34:5–35:1.  Further, the Court confirmed that Walls was entirely satisfied with the services rendered her by defense counsel:

| | |
|---|---|
| **THE COURT:** | Ms. Walls, about how long have you known [defense counsel Gregory Wittner]? |
| **[WALLS]:** | I've known Mr. Wittner since last year of—I can't remember the actual date but '21, like, last year. |
| **THE COURT:** | Very good. |

|  | And have any other attorneys helped you in any way in this case? |
|---|---|
| **[WALLS]:** | Well, him and Joel, but I've been really talking to Mr. Wittner. |
| **THE COURT:** | And you mean Joel Schwartz? |
| **[WALLS]:** | Yes. |
| **THE COURT:** | And so has either Mr. Wittner or Mr. Schwartz conducted themselves in a way that causes you to have any complaint against them for anything they did, anything you believe they failed to do or any other reason at all? |
| **[WALLS]:** | No. |
| **THE COURT:** | Are you fully satisfied with the services they have performed for you in this case? . . . |
| **[WALLS]:** | Yes, Your Honor. |
| **THE COURT:** | Very good.  So I'm going to talk with you now about waiver of pretrial motions and waiver of trial rights.   Do you understand that by pleading guilty you are giving up the right to file pretrial motions, including motions to suppress evidence or any statements that you may have made? |
| **[WALLS]:** | Yes. |
| **THE COURT:** | And did you discuss that decision with your attorneys? |
| **[WALLS]:** | Yes, I did. |
| **THE COURT:** | Are you fully satisfied with the decision you and your attorneys have made about waiving pretrial motions? |
| **[WALLS]:** | Yes. |
|  | . . . |
| **THE COURT:** | Before you signed this agreement, Ms. Walls, did you have enough time to review it with your attorney and have him answer any questions you had about the agreement and discuss any possible defenses you have to this case? |

| | |
|---|---|
| **[WALLS]:** | Yes, Your Honor. |
| **THE COURT:** | And did you do that before today? |
| **[WALLS]:** | Yes, Your Honor. |

*Id.* at 7:19–9:4, 12:17–24.

In September 2022, the Court held a sentencing hearing in which it revised the guidelines calculations, yielding a total offense level of 13, a criminal history category of II, and a sentencing guidelines range of 15 to 21 months of imprisonment.  Doc. 217, Sentencing Tr. at 24:20–25:3; doc. 171 at 1.  The Court then sentenced Walls to a within-the-guidelines-range sentence of 15 months of imprisonment followed by a three-year term of supervised release.  *Id.* at 29:14–24.  Before imposing its sentence, the Court once again confirmed that Walls remained fully competent to proceed:

| | |
|---|---|
| **THE COURT:** | So, Ms. Walls, have you used any drugs or alcohol in the last 48 hours? |
| **[WALLS]:** | No, Your Honor. |
| **THE COURT:** | Are you currently taking any medication? |
| **[WALLS]:** | My doctor had gave me high blood pressure pills because I did have my son a little earlier than expected because of my high blood pressure.  So I do have high blood pressure pills to take. |
| **THE COURT:** | Are you currently taking them? |
| **[WALLS]:** | Yes. |
| **THE COURT:** | Do they in any way affect your ability to understand or fully appreciate what we're doing here today? |
| **[WALLS]:** | No, Your Honor. |
| **THE COURT:** | Did they, at any time, affect your ability to understand or communicate with your attorneys in this case? |

|  |  |
|---|---|
| **[WALLS]:** | No, Your Honor. |

*Id.* at 5:7–24.  The Court also confirmed that Walls remained satisfied with the services rendered her by defense counsel:

|  |  |
|---|---|
| **THE COURT:** | [W]hen you plead guilty, you told me that you were fully satisfied with the services your attorney has performed for you in this case, or your attorneys have performed for you in this case. |
|  | Since then, have you had enough time to talk with your attorneys and ask them any questions you had about the case? |
| **[WALLS]:** | Yes, Your Honor. |
| **THE COURT:** | And do you remain fully satisfied with the representation that Mr. Wittner and Mr. Schwartz have provided for you in this case? |
| **[WALLS]:** | Yes, Your Honor. |

*Id.* at 3:2–13.

After sentencing, Walls filed a notice of appeal but then moved to voluntarily dismiss the appeal before filing a brief.  *See* docs. 186, 229.  She finished serving her sentence of imprisonment on September 5, 2023, and remains under supervised release.[3]

### B.    Civil proceedings

On September 21, 2023, Walls timely filed a motion to vacate her sentence pursuant to 28 U.S.C. § 2255.  Doc. 1.  Her petition makes numerous claims of procedural impropriety. First, she claims that at her change-of-plea hearing, "[t]here was no question asked nor credence given to the clear-mindedness of a woman in the late stages of her pregnancy, which often include severe fatigue which can lead to delirium."  *Id.* at ¶ 5.  Second, she states that "[w]hen [defense counsel] was asked [by the Court] if he believed that [she] possessed the competency to

---

[3] *See* Find an inmate, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited April 30, 2024).

proceed, he was wholly unqualified to give an opinion on that matter and [the Court] called for him to infer his opinion as to her competency." *Id.* at ¶ 6. Third, she claims that "[w]hen asked if she was satisfied with the services of her counsel, [she] lacked the ability to give an honest response, due to the fact that her possibly defenses to the charges had not been revealed nor explored." *Id.* at ¶ 8. Fourth, she protested that "even though [she had] retained a named partner at [a] law firm, [her criminal] proceeding[s] were handled by a less seasoned attorney." *Id.* at ¶ 10. Fifth, she claims that "the concept of pretrial motions had never been explained to her." *Id.* at ¶ 11. Sixth, she insists that contrary to her defense counsel, "[a]ny competent counsel would have advised that she review any and all exculpatory evidence." *Id.* at ¶ 13. Seventh, she argues that "direct appeals were effectively waived by counsel to [her] detriment." *Id.* at ¶ 16.

The United States responded to the petition by arguing that the record conclusively demonstrates that Walls is entitled to no relief, and that Walls fails to satisfy the two-pronged *Strickland* analysis for ineffective-assistance-of-counsel claims. *See* doc. 8. Walls replied by insisting that she would be able to prove her claims once the Court allows her an evidentiary hearing. Doc. 12. The Court notes that Walls filed her reply one day past the deadline for doing so, *see* docs. 11–12, and reminds Walls's counsel that it typically strictly enforces its deadlines, but accepts the filing here.

## III.    Standard

### A.    Habeas review

Under section 2255, a federal prisoner "may move the court which imposed [his] sentence to vacate, set aside or correct the sentence" on the grounds that the court imposed "the sentence . . . in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum

14

authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).  If a

petitioner claims his sentence violates the Constitution or laws of the United States, the petitioner

must establish that the violation constitutes "a fundamental defect which inherently results in a

complete miscarriage of justice." *United States v. Gomez*, 326 F.3d 971, 974 (8th Cir. 2003)

(first quoting *United States v. Boone*, 869 F.2d 1089, 1091 n.4 (8th Cir. 1989); and then citing

Fed. R. Crim. P. 32(d) advisory committee notes to the 1983 amendments).  Generally, to obtain

section 2255 relief based on a claim, a petitioner must have raised the underlying error on direct

appeal.  *See Roundtree v. United States*, 885 F.3d 1095, 1097 (8th Cir. 2018).  If a petitioner

failed to do so, the Court considers the claim procedurally defaulted, rendering it ineffective in

establishing a right to section 2255 relief.  *See id.*

       Three exceptions to this general rule exist.  First, "if the error is jurisdictional, the error

may be raised on collateral review without being subjected to procedural default analysis."

*United States v. Mooring*, 287 F.3d 725, 727 (8th Cir. 2002).  Second, if a petitioner raises a

constitutional claim, the Court does not consider the claim procedurally defaulted if the

petitioner shows cause for the default and actual prejudice.  *See Anderson v. United States*, 25

F.3d 704, 706 (8th Cir. 1994); *Reid v. United States*, 976 F.2d 446, 448 (8th Cir. 1992).  This

"cause and prejudice exception does not apply to nonconstitutional or nonjurisdictional claims

that could have been but were not raised on direct appeal."  *Anderson*, 25 F.3d at 706 (first citing

*Brennan v. United States*, 867 F.2d 111, 120 (2d Cir. 1989); and then citing *Bontkowski v. United

States*, 850 F.2d 306, 313 (7th Cir. 1988)).  Finally, the Court "will consider a claimed error that

could have been raised at trial or on direct appeal if the alleged error was a fundamental

miscarriage of justice."  *Id.* (citing *Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993)

(per curiam)).  This exception, however, "applies only when a petitioner shows by clear and

convincing evidence that, but for an alleged constitutional error, no reasonable juror would have found the petitioner guilty," *id.* at 706–07 (citing *Wallace v. Lockhart*, 12 F.3d 823, 827 (8th Cir. 1994)), and extends only to claims of factual innocence, *id.* at 707 (first citing *Narcisse v. Dahm*, 9 F.3d 38, 40 (8th Cir. 1993); and then citing *Ramey*, 8 F.3d at 1314).

If the petitioner's claims are not procedurally barred, the Court must hold an evidentiary hearing to consider the claims "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994). A petitioner is entitled to an evidentiary hearing "when the facts alleged, if true, would entitle [the petitioner] to relief." *Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996) (quoting *Wade v. Armontrout*, 798 F.2d 304, 306 (8th Cir. 1986)). However, a court may dismiss a claim without a hearing "if the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Shaw*, 24 F.3d at 1043 (citing *Larson v. United States*, 905 F.2d 218, 220–21 (8th Cir. 1990)).

**B.      Ineffective assistance of counsel**

A petitioner may raise an ineffective-assistance-of-counsel claim for the first time in a § 2255 motion, even if he could have raised the same claim on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). This exception exists to prevent petitioners from being forced "to raise the issue before there has been an opportunity fully to develop the factual predicate for the claim." *Id.* Additionally, a petitioner's attorney may serve as counsel for both trial and appellate proceedings, and it is unlikely that the attorney would raise a claim of his own ineffective assistance on appeal. *See United States v. Rashad*, 331 F.3d 908, 911 (D.C. Cir. 2003).

To succeed on an ineffective-assistance-of-counsel claim, a movant must show both that counsel's performance was deficient and that the deficient performance prejudiced the movant's case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Sera*, 267 F.3d 872, 874 (8th Cir. 2001). A movant "faces a heavy burden" to establish ineffective assistance of counsel under § 2255. *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). An attorney's performance is deficient if it falls "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88; *Sera*, 267 F.3d at 874. Two substantial impediments exist to making such a showing. First, the law applies a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 689). Second, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* (quoting *Strickland*, 466 U.S. at 690).

## IV.   Discussion

As an initial matter, the Court notes that Walls's petition makes not a single citation to the record or to caselaw, and her reply brief cites only enough caselaw to state the *Strickland* standard for the first time. *See* docs. 1, 12. But the Eighth Circuit has noted that "a petition which consists only of 'conclusory allegations unsupported by specifics . . .' is insufficient to overcome the barrier to an evidentiary hearing on a section 2255 motion." *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985) (quoting *Blackledge v. Allison*, 431 U.S. 63, 73 (1977)). On that standard, Walls's petition falls well short of demonstrating that she is entitled to relief. Even if she had conducted a fulsome analysis of her claims, however, each alleged defect fails to clear the bar for relief under § 2255.

First, the record in this case demonstrates the very opposite of Walls's claim that "[t]here was no question asked" at her change-of-plea hearing regarding "the clear-mindedness of a woman in the late stages of pregnancy."  Doc. 1 at ¶ 5.  The Court specifically inquired as to whether Walls was "under the care of a doctor," and when informed of her pregnancy, confirmed that she remained competent to proceed.  *See supra* p. 9.  "Are you experiencing any issues with your pregnancy that would cause you not to be able to understand or fully appreciate what we are doing here today?" the Court asked.  *See id.*  "No," Walls replied.  *See id.*  "Is your mind clear today, are you feeling well and are you ready to proceed?"  *See id.*  "Yes," Walls confirmed once more.  *See id.*

That exchange reflects the Court's careful discernment of the effect of Walls's pregnancy on her competence to proceed, after which the Court explicitly made the factual finding that "Ms. Walls is competent to proceed."  *See id.*  It also demonstrates the context in which the Court sought defense counsel's opinion on Walls's competence.  Walls insists that the Court should not have asked defense counsel about the effect of Walls's pregnancy on her competence because "he was wholly unqualified to give an opinion on that matter," doc. 1 at ¶ 6, but the Court merely asked defense counsel to confirm what Walls had already just told the Court herself:  that there was no reason to doubt her competence to proceed.

The Court did not rely, in other words, on defense counsel's opinion of her competence as much as on Walls's own insistence thereof.  Later in the proceedings, when the Court noticed that Walls may have felt something related to her pregnancy, the Court paused to confirm that she remained able to proceed.  "Ms. Walls, are you okay?" the Court asked.  *See supra* p. 9.  "Yeah," she replied, "[h]e's just kicking a lot."  *See id.*  "I understand.  If you need to take a break, let me know, okay?" *See supra* p. 10.  "I'm fine," Walls insisted.  *See id.*  Accordingly,

"the files and records of the case conclusively show that [Walls] is entitled to no relief," §
2255(b), on the grounds that "no question was asked" regarding her "clear-mindedness," or that
the Court improperly sought defense counsel's opinion regarding her pregnancy.

Walls's remaining allegations go to her dissatisfaction with the services rendered her by
defense counsel. But Walls makes no effort to demonstrate that her dissatisfaction meets the
two-pronged *Strickland* analysis for ineffective assistance of counsel. To succeed on an
ineffective-assistance-of-counsel claim, a movant must show two things: first, that counsel's
performance was deficient; and second, that the deficient performance prejudiced the movant's
case. *Strickland*, 466 U.S. at 687; *Sera*, 267 F.3d at 874. Even assuming that defense counsel's
performance fell "below an objective standard of reasonableness," *Strickland,* 466 U.S. at 687–
88; *Sera*, 267 F.3d at 874, Walls makes no allegation of prejudice that would satisfy *Strickland*'s
second prong, *see* doc. 1. In fact, she makes no allegation whatsoever that the outcome of her
case would have been in any way different if not for the deficiencies she alleges. *See id.* Nor
does she suggest what arguments or claims effective counsel would have raised that defense
counsel did not. *See id.* That much suffices to doom Walls's ineffective-assistance-of-counsel
claims.

But in any event, those ineffective-assistance claims also fly in the face of the record in
this case. At her change-of-plea hearing, the Court confirmed that Walls was entirely satisfied
with the services of defense counsel in this case. "Has either Mr. Wittner or Mr. Schwartz
conducted themselves in any way that causes you to have any complaint against them for
anything they did, anything you believe they failed to do or any other reason at all?" the Court
asked. *See supra* p. 11. "No," Walls unambiguously replied. *See id.* "Are you fully satisfied
with the services they have performed for you in this case?" *See id.* "Yes, Your Honor," Walls

confirmed once more.  *See id.*  The Court then specifically inquired as to her waiver of pretrial

motions and trial rights.  "Do you understand that by pleading guilty you are giving up the right

to file pretrial motions, including motions to suppress evidence or any statements that you may

have made?"  *See id.*  "Yes," Walls replied.  *See id.*  "And did you discuss that decision with

your attorneys?"  *See id.*  "Yes, I did," she said.  *See id.*  "Are you fully satisfied," the Court

inquired yet again, "with the decision you and your attorneys have made about waiving pretrial

motions?"  *See id.*  "Yes," said Walls.  *See id.*  Finally, the Court ascertained that she had

explored possible defenses to this case with defense counsel.  "Before you signed this

agreement," the Court asked, "did you have enough time to review it with your attorney . . . and

discuss any possible defenses you have to this case?"  *See id.*  "Yes, Your Honor," Walls replied.

*See supra* at 12.  "And did you do that before today?"  *See id.*  "Yes, Your Honor," she

confirmed.  *See id.*

At Walls's sentencing, the Court confirmed once more that she remained satisfied with

the services rendered her by defense counsel.  "[W]hen you plead guilty, you told me that you

were fully satisfied with the services . . . your attorneys have performed for you in this case.

Since then, have you had enough time to talk with your attorneys and ask them any questions

you had about the case?"  *See supra* at p. 13. "Yes, Your Honor," Walls replied.  *See id.*  "And

do you remain fully satisfied with the representation that [they] have provided for you in this

case?"  *See id.*  "Yes, Your Honor," Walls confirmed once more.  *See id.*  These repeated

exchanges across both her change-of plea and sentencing hearings demonstrate how the record in

this case belies Walls's insistence that she received ineffective assistance of counsel (and Walls

fails to point to any specific alleged failure of counsel other than with respect to pretrial motions,

which the Court discussed above).

Accordingly, "the files and records of the case conclusively show that [Walls] is entitled to no relief," § 2255(b), and for all these reasons, the Court denies Walls's motion and request for an evidentiary hearing.

## V.    Certificate of appealability

For the Court to issue a certificate of appealability, Walls must make a substantial showing that she suffered the denial of a constitutional right.  *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997).  A substantial showing is one indicating that reasonable jurists could debate the issues, a court could resolve the issues differently, or the issues deserve further proceedings. *Id.*  But as described in the discussion above, Walls has not made such a showing.  Accordingly, the Court declines to issue a certificate of appealability in this case.

## VI.    Conclusion

The Court finds that the record conclusively establishes that Walls is not entitled to relief. Accordingly, the Court denies Walls' Motion to vacate her sentence under 28 U.S.C. § 2255, *see* doc. 1, and her request for an evidentiary hearing, *id*.  Further, the Court declines to issue a certificate of appealability.  A separate order of dismissal accompanies this memorandum and order.

So ordered this 30th day of April 2024.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE